State v. William Moore.

## THE STATE v. WILLIAM MOORE, Appellant.

### Division Two, May 8, 1900.

1. **Change of Venue: NEW INDICTMENT.** Every new indictment is practically a new case. And any error the court may have committed in refusing defendant's application for a change of venue filed before a former indictment which attempted to charge the same crime was quashed, can not be considered after defendant has been convicted on an indictment found after the application for a change of venue was overruled.

2. **Special Judge: SPECIAL GRAND JURY.** The judge of an adjoining circuit was called to try the case then pending against defendant, and on motion quashed the indictment, and ordered him held to a special grand jury. Thereupon the regular judge appeared in court, and ordered the special grand jury, which returned the indictment on which defendant was convicted. *Held*, that the regular judge did not err in ordering the special grand jury, although he had been disqualified from trying the case under a former indictment at a preceding term, for that proceeding after the indictment was quashed was null and void. *Held*, also, that as no exception was taken to this action at any time in the trial court, it can not be considered on appeal.

156  135
162  225
162  234

3.  **Former Acquittal:** INDICTMENT: RECORD.  Unless the former indictment under which defendant was tried and acquitted is copied into the record, there is nothing to show that the indictment under which the first trial was had was for the same offense as that charged in the one under which he was convicted.

4.  ———: ———: VARIANCE BETWEEN INDICTMENT AND PROOF. Although two indictments may charge the same offense, yet if at a trial under one of them the court directs an acquittal on the ground that there is a variance between the indictment and proof, such acquittal is no bar to a conviction under the subsequent indictment.

Appeal from Hickory Circuit Court.—*Hon. James T. Neville*, Judge.

AFFIRMED.

*J. W. Montgomery* for appellant.

(1)  The special judge erred in calling regular judge to make an order for sheriff to summon special grand jury.   We know no law whereby a special judge, after he has sustained a motion to quash the indictment, can call back the regular judge to the bench, after a change of venue has at a prior time been taken from said regular judge.   On the contrary, after the motion was sustained quashing the indictment, the special judge had the sole power to make an order for a special grand jury, to be summoned to inquire of the same offense as in case the indictment was lost.   State v. Miderer, 94 Mo. 79; State v. Harris, 73 Mo. 287; Laws 1874, sec. 7, p. 99.   (2)  Defendant was twice put in jeopardy for the same offense by reason of the court sustaining motion to strike out defendant's plea of *autre fois acquit*, and has been twice tried for the same offense, the first resulting in a verdict of not guilty and the second in a conviction.  1 Bishop's Crim. Law (7 Ed.), sec. 1045; State v. Snyder, 98 Mo. 55; State v. Snyder, 29 Mo. App. 256; State v. Wisebock, 139 Mo. 214. (3)  The defendant was entitled to a jury trial on his plea of former acquittal.   State v. Huffman, 136 Mo. 58; State v. Heath, 8 Mo. App. 99.

State v. William Moore.

*Edward C. Crow,* Attorney-General, and $\tilde{S}am$ *B. Jeffries,* Assistant Attorney-General, for the State.

(1) There was no error in the special judge recalling the regular judge to the bench to order a special grand jury to be summoned, after the former had quashed the indictment. When the indictment was quashed the case was at an end; with the order of the regular judge for a special grand jury, a new proceeding began, and J. T. Neville, special judge, had no connection therewith or authority therein, until the regular judge made the order showing that he was biased and prejudiced against the defendant and again called J. T. Neville to sit as special judge in this new case. However this may be, if there had been no order at all for the summoning of the grand jury, defendant could not complain. State v. Connel, 49 Mo. 282; State v. Bleekley, 18 Mo. 430; State v. Hart, 66 Mo. 213; State v. Breen, 59 Mo. 412. (2) The indictment under which defendant was tried and acquitted under the instruction of the court, because of variance, is not in the record, and there is therefore nothing to show to this court that the indictment under which he was first tried was the same or in any way the same as the one under which he was tried and convicted. The record showing nothing to the contrary, the appellate court will indulge the presumption that the action of the trial court was right. (3) The indictment was sufficient. It is based on sec. 3564, R. S. 1889, and alleges every element prescribed which applies to obtaining the signature of any person to any written instrument. It makes no difference that the real estate obtained by means of the fraud went to Nelson and not to defendant. Defendant, as the indictment alleges, obtained the signature to the deed, designedly and with the intent to cheat and defraud another, and it is immaterial for whom he obtained title to the property as a result. There is no merit in appellant's objection that the indictment does not sufficiently give the name of the party with whom he is jointly indicted. The initials of his

Christian name are sufficient.  State v. Johnson, 93 Mo. 317; State v. Stacy, 103 Mo. 11; State v. Sweeney, 56 Mo. App. 409.

BURGESS, J.—At the May term 1898, of the circuit court of Hickory county, defendant was indicted by the grand jury of said county for obtaining by false pretenses and representations, a deed from one John T. Dixon to a certain tract of land in said county, of which he was the owner, of the alleged value of two thousand dollars.

At the following November term of said court, he was tried by a jury, and under the instructions of the court acquitted upon the ground that there was a variance between the charge in the indictment and the proof made upon the trial.  At the same term of said court the grand jury of said county returned a new indictment against H. C. Nelson and the defendant William Moore for the same offense.

At the May term 1899 of said court defendant filed his motion for a change of venue from the Hon. Argus Cox, the regular judge, then presiding, whereupon the cause was set for trial July 31, 1899, and the Hon. James T. Neville, judge of the 22d judicial circuit, was called to try the case. On the day last named the case came on for trial before the Hon. James T. Neville. Defendant then filed his application for a change of venue from the county, which was overruled. He then filed his motion to quash the indictment which was sustained, and defendant ordered held to await the action of a special grand jury.

The Hon. Argus Cox then appeared in court, and by order entered of record, made an order for a special grand jury, in pursuance of which a special grand jury was summoned, by whom defendant and Nelson were again indicted for the same offense.

This last indictment charges that "on or about the 18th day of May, 1897, at the county and State aforesaid, H. C. Nelson and William Moore did then and there unlawfully,

willfully, designedly and feloniously, with the intent to cheat
and defraud one John T. Dixon, did then and there unlaw-
fully, falsely, fraudulently and feloniously pretend and rep-
resent to the said John T. Dixon that he, the said, H. C.
Nelson, was the owner in his own right in fee, under good
and sufficient conveyances from George Garrison, of a certain
farm or lands well known to the said John T. Dixon, and to
the said defendants as the Breitenstein land or farm, and that
it was at one time owned by the said Breitenstein and con-
veyed by the said Breitenstein to George Garrison, and they
the said H. C. Nelson and the said William Moore further
pretended and represented to the said John T. Dixon, that
the said Breitenstein farm or lands was designated by govern-
ment survey as the east half of the northeast quarter of section
21, township No. 10, of range No. 14, in Cass county,
Nebraska, and that the said land or farm with the improve-
ments thereon were worth the sum of two thousand dollars.
And the said John T. Dixon being then and there at the time
the owner of the following described lands situate in the
county of Hickory and State of Missouri, to-wit, the north
half of the southwest quarter and the north half of the south-
east quarter of section No. 13, township No. 38 of range No.
21, and said lands being of the value of two thousand dollars,
and the said John T. Dixon, believing and relying on the
said false and fraudulent representations and pretenses so made
as aforesaid by the said H. C. Nelson and the said William
Moore to be true and being deceived thereby, was induced by
reason of said false and fraudulent representations and pre-
tenses aforesaid, to sign, acknowledge and deliver to the said
H. C. Nelson a warranty deed conveying all the right, title
and interest of the said John T. Dixon in and to the north half
of the southeast quarter and the north half of the southwest
quarter of section No. 13, township No. 38, range No. 21,
in Hickory county, Missouri, of the value of two thousand
dollars.    And the said John T. Dixon was induced by reason

of said false and fraudulent representations to receive and did receive of and from the said H. C. Nelson, in exchange for his said lands, a deed from the said H. C. Nelson, purporting to convey to him the said John T. Dixon the land in Cass county, Nebraska, well known to the said John T. Dixon as the Breitenstein land or farm, at one time owned by Breitenstein and conveyed by him the said Breitenstein to George Garrison the lands in said deed being numbered as the east half of the northeast quarter of section 21, township No. 10, range No. 14. That the said H. C. Nelson and the said William Moore falsely and fraudulently stated, represented and pretended that the said east half of the northeast quarter of section 21, township No. 10, range No. 14, was the land known as the Breitenstein land or farm in Cass county, Nebraska, and conveyed from Breitenstein to George Garrison, when in truth and in fact said statements and representations were wholly false and fraudulent, all of which the said H. C. Nelson and the said William Moore knew at the time; when in truth and in fact the north half of the northeast quarter of section 21, township No. 10, range No. 14, did not describe nor convey to the said John T. Dixon the land or farm known to the said John T. Dixon as the Breitenstein land or farm, all of which the said H. C. Nelson and the said William Moore knew at the time; when in truth and in fact the said H. C. Nelson had no right, title or interest in the land known as the Breitenstein land or farm, in Cass county, Nebraska, and the grand jurors aforesaid upon their oaths aforesaid, present and charge that the said H. C. Nelson and the said William Moore, in the manner and form aforesaid and by the use of the false and fraudulent representations and pretenses aforesaid, did unlawfully, willfully and feloniously procure the signature of the said John T. Dixon and his acknowledgment and the delivery of his warranty deed, conveying to the said H. C. Nelson the north half of the southwest quarter and the north half of the southeast quarter

of section No. 13, township No. 38, range 21, in Hickory county, Missouri, of the value of two thousand dollars, by the means and in the manner and form aforesaid, did then and there willfully, unlawfully and feloniously induce him, the said John T. Dixon with the intent him the said John T. Dixon, then and there to cheat and defraud, and him the said H. C. Nelson and him the said William Moore did then and there, by means and use of the false and fraudulent representations and pretenses aforesaid, unlawfully and feloniously procure the signature of the said John T. Dixon to his warranty deed aforesaid, and him the said John T. Dixon, unlawfully, fraudulently and feloniously did cheat and defraud, against the peace and dignity of the State."

After the indictment had been returned into court Judge Cox made an order of his own motion, that he was biased and prejudiced against defendant, and again called Judge Neville to try the case, who proceeded to do so. Thereupon defendant filed a plea in bar to this last indictment alleging a former trial, and acquittal in said circuit court, at its November term, 1898, of the same offense. This plea was on motion of the State stricken out.

Upon the last trial defendant was convicted as charged, and his punishment fixed at three years imprisonment in the penitentiary.

After an unsuccessful motion for a new trial and also in arrest, he appeals.

It is asserted that the court erred in overruling defendant's application for a change of venue, but the bill of exceptions fails to show that any such application was made after the indictment under which he was convicted was presented by the grand jury, and the last indictment being in law a new case, an application for a change of venue under any prior indictment and its refusal, can not be availed of by the defendant in this case.

It is asserted that the regular judge erred in ordering a

special grand jury, after he had been disqualified from trying the case under a former indictment at a preceding term of the court, and that the indictment returned by that grand jury, being the one under which defendant was convicted, is null and void. Judge Neville was only called for a special purpose, that is, to try the case then pending against defendant, and it was entirely legal and proper for the regular judge to order and impanel the grand jury, or to transact any other legal business, over which his court had jurisdiction. There was then no indictment pending against defendant, and the fact that the judge had been disqualified from sitting on the trial of him under a former indictment, although growing out of the same transaction, did not disqualify him from ordering the special grand jury. Moreover, no objection was taken at the time of the action of the court or to the indictment thereafter returned and it can not be done for the first time in this court.

It is insisted that the court erred in sustaining the motion to strike out the plea of former acquittal. In answer to this contention it is sufficient to say that the indictment under which defendant was tried and convicted is not copied into the record, but is stated therein by the clerk of the court to be lost, and there is, therefore, nothing to show that the indictment under which the first trial was had, was for the same offense as that charged against him in the indictment under which he was convicted.

Moreover even if it was the same offense the record shows that defendant was acquitted on the trial of the first case upon the ground of variance between the indictment and the proof, and, under such circumstances the former acquittal was no bar to a subsequent indictment and prosecution for the same offense. [Sec. 3952, R. S. 1889; sec. 2372, R. S. 1899.] The acquittal on the ground of variance between the proof and the allegations in the indictment being matter of record, defendant was not entitled to have a trial by jury on his plea in

bar. [State v. Huffman, 136 Mo. 58.] For the same reasons there was no error committed in giving the second instruction for the State, which was upon the same theory.

We are unable to see any objection to the indictment. It contains all necessary averments in order to constitute the offense charged and of which defendant was convicted.

It follows from what has been said that there was no error in overruling the motion for new trial, or in arrest of judgment.

The judgment should be affirmed, and it is so ordered. *Gantt, P. J.*, and *Sherwood, J.*, concur.